UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK SMITH,

        Plaintiff,

        v.

DANIEL HEYNS, DENNIS STRAUB,
THOMAS COMBS, CHARLES BROWN,
STEPHEN DEBOER, JANE PRICE, JOEL
MORRILL, MARYANN BULLEHANGER,
LAURA HEINRITZ, J. LUCKY, and C. DYER,

        Defendants.

_____/

CASE NO. 2:12-CV-11373
JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON: (1) PLAINTIFF'S MOTIONS FOR
TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION (docket #12
& #22); (2) DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (docket #19 &
#32); and (3) PLAINTIFF'S MOTIONS FOR JUDGMENT (docket #41-43 & #58)**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Plaintiff's Motions for Preliminary Injunction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    *Defendants' Motions for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.    *Parole Related Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            a. Ex Post Facto Violation (Compl, ¶¶ 75-76, 99) . . . . . . . . . . . . . . . . . . . . . . 13
            b. Due Process (Compl., ¶¶ 82, 94) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            c. Equal Protection (Compl., ¶ 91-92) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            d. Retaliation (Compl., ¶ 91-92) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        3.    *Medical Treatment Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            a. Deliberate Indifference (Compl., ¶¶ 77, 80, 84-86, 96-97) . . . . . . . . . . . . . . . 22
            b. Due Process (Compl., ¶ 82) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        4.    *Equal Protection (Compl., ¶¶ 80-81)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        5.    *Retaliation and Conspiracy Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    D.    *Plaintiff's Motions for Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        1.    *Failure to Answer* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        2.    *Local Rule 58.1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I.    <u>RECOMMENDATION</u>: The Court should deny plaintiff's two motion for preliminary injunction, grant defendants' two motions for summary judgment, and deny plaintiff's four motions for judgment.  Specifically, the Court should grant summary judgment to defendants Heyns, Straub, Combs, Brown, DeBoer, Price, Heinritz, Bull-Ehinger, and Luckey with respect to each of the federal constitutional claims asserted by plaintiff.  If the Court accepts this recommendation, the following claims will remain pending: (1) all of plaintiff's claims against defendants Morrill and Dreyer; (2) plaintiff's Rehabilitation Act and ADA claims against all defendants; and (3) any state law claims plaintiff is asserting against all defendants.

II.    <u>REPORT</u>:

A.    *Procedural Background*

Plaintiff Frederick J. Smith commenced this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983.  Plaintiff is a state prisoner, currently serving sentences imposed as a result of his 1979 convictions for unarmed robbery and second-degree criminal sexual conduct, and his 1984 convictions for first-degree criminal sexual conduct and felony-firearm.  Defendants are:  Daniel Heyns, Director of the Michigan Department of Corrections (MDOC); Dennis Straub, former Deputy Director of the Correctional Facilities Administration (CFA); Thomas Combs, Director of the Michigan Parole Board ("the Board"), and Board members Charles Brown, Stephen DeBoer, and Jane Price; Mary Ann Bull-Ehinger, a Community Health Services Manager at the Parnall and Cooper Street Correctional Facilities; Laura Heinritz, a Security Classification Director for the CFA;  and James Luckey and Craig Dreyer, librarians at the Cooper Street Correctional Facility.

Plaintiff's allegations revolve around his consideration for parole and his participation in a

Sex Offender Program (SOP).  Plaintiff alleges that he attended a parole interview conducted by defendant Brown on January 4, 2010.  At that time, plaintiff indicated that he maintained his innocence, was appealing his case to the United States Supreme Court, and refused to participate in an SOP.  According to plaintiff, Brown informed him that he could not grant plaintiff parole because plaintiff would not participate in SOP group therapy.  *See* Compl., ¶¶ 14-16.  Plaintiff was denied parole on March 26, 2010.  *See id.*, ¶ 17.  On April 2, 2010, plaintiff spoke with Gus Harrison Correctional Facility psychologist Dickenson about participating in the SOP at Gus Harrison. Dickenson informed him that he would be scheduled for an interview.  *See id.*, ¶ 18.  On April 8, plaintiff wrote a letter to defendant Straub, asking where his name was on the SOP waiting list. Plaintiff alleges that defendant Heinritz responded to his letter on April 19 by threatening plaintiff and suggesting he would be punished for misspelling defendant Straub's name.  *See id.*, ¶¶ 19-20. Plaintiff was interviewed by Dickenson on May 30, 2010, and was told that his name was at the top of the waiting list and that he would begin group therapy on June 4.  *See id.*, ¶ 23.

On June 3, 2010, one day prior to the start of his scheduled therapy, plaintiff was transferred from the Gus Harrison Correctional Facility, first to the Parnall facility and then to the Cooper Street facility.  Shortly after his arrival at Parnall plaintiff contacted psychologist Small, who assured him that he would begin group therapy soon.  Plaintiff was subsequently scheduled to begin group therapy at Parnall.  However, on July 15, 2010, plaintiff was transferred from Parnall to the Cooper Street Facility.  *See id.*, ¶¶ 25-30.  Once in the Cooper Street facility, plaintiff participated in group and individual therapy sessions with defendant Morrill.  Plaintiff alleges that Morrill treated him and other African-American inmates different than similarly situated white inmates, repeatedly threatened to give him bad reports or terminate him from the SOP, and made sexual advances toward

3

him.  *See id.*, ¶¶ 31-45.  On March 25, 2011, plaintiff was terminated from the SOP.  He alleges that

the Termination Report contained false and inaccurate information that defendant Morrill refused

to remove, but that she removed information from the termination reports of white inmates.  *See id.*,

¶ 46.  Plaintiff filed a number of grievances or complaints regarding these matters.  *See id.*, ¶¶ 54-65.

Plaintiff's complaint asserts nine overlapping counts, each asserting various claims.

Specifically, plaintiff asserts the following constitutional violations:

- denial of the Ex Post Facto Clause by the requirement that he participate in an SOP as a condition of receiving parole, *see id.*, ¶¶ 75-76, and by the Board's reliance on public safety concerns in denying parole, *see id.*, ¶ 99;

- deliberate indifference to his serious medical needs in violation of the Eighth Amendment by the failure to allow him to obtain mental health treatment at the Parnall facility, and requiring him to obtain treatment from defendant Morrill, *see id.*, ¶¶ 77, 80, 84-86, 96-97;

- retaliation against him for attempting to exercise his right to obtain medical treatment, and a conspiracy to retaliate against him by the defendants, in violation of the First Amendment, *see id.*, ¶¶ 77-78, 88-89.

- discrimination on the basis of race in violation of the Equal Protection Clause by defendants' failure to allow him to be treated at the Parnall facility and instead transferring him to be treated by defendant Morrill at the Cooper Street facility, and racial discrimination by defendant Morill, *see id.*, ¶¶ 80-81;

- violation of his rights to procedural and substantive due process based on the failure to provide adequate mental health treatment, the false statements in his Termination Report, and his subsequent ineligibility for parole, *see id.*, ¶ 82;

- improper denial of parole based on racial discrimination and retaliation for the exercise of plaintiff's First Amendment rights; *see id.*, ¶¶ 91-92;

- denial of due process by the Board's failure to adhere to the guidelines governing parole; *see id.*, ¶ 94; and

- denial of access to the prison law library in retaliation for his exercise of his right to file grievances, *see id.*, ¶¶ 102-03.

In addition to his federal constitutional claims, plaintiff appears to assert claims under the Americans

with Disabilities Act and state law claims, including a medical malpractice claim against defendant Morrill. Plaintiff seeks compensatory and punitive damages, as well as various forms of injunctive relief. Plaintiff has also filed two motions to amend his complaint, which have been granted by a separate Order entered this date. In the first motion, plaintiff adds a claim explicitly asserting violations of § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. In the second motion, plaintiff adds a retaliation claim against defendant Luckey based on Luckey's alleged failure to allow him to use the law library, and a retaliation claim against unspecified defendants based on their continued harassment, including searching his cell.

This matter is before the Court on several motions filed by the parties. First, plaintiff filed motions for a preliminary injunction on May 4 and July 11, 2012. Defendants filed a response to the motions on August 20, 2012. Second, on July 3, 2012, defendants (except for defendants Luckey, Morrill, and Dreyer) filed a motion for summary judgment addressing the federal constitutional claims raised in plaintiff's complaint and, on August 7, 2012, defendant Luckey filed a motion for summary judgment addressing plaintiff's retaliation claim against him. Plaintiff filed a response to the motions for summary judgment on August 28, 2012. Third, plaintiff filed four motions for judgment on August 30, September 6 and September 7, 2012, and January 7, 2013.[1]

B.  *Plaintiff's Motions for Preliminary Injunction*

In his two motions for preliminary injunction, plaintiff seeks an injunction requiring defendants to refrain from using the allegedly false Termination report as a basis to deny parole consideration or participation in parole programs, and requiring defendant to conduct an additional

---

[1]Also pending are plaintiff's two motions to amend and his motion for leave to file a longer brief. These motions are addressed in a separate Order issued on this date. Defendants Morrill and Dreyer filed a motion for summary judgment on January 8, 2013. Because plaintiff has not had an opportunity to respond to this motion, it is not yet ripe for decision.

psychological evaluation by a qualified psychologist.  The Court should deny these motions.

      1.    *Legal Standard*

"In the exercise of its discretion with respect to a motion for preliminary injunction, a district court must give consideration to four factors:  '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *American Civil Liberties Union of Ky. v. McCreary County, Ky.*, 354 F.3d 438, 445 (6th Cir. 2003) (quoting *Rock and Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998)); *see also*, *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003).

"'The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.'" *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.2001)); *see also*, *Taubman Co.*, 319 F.3d at 774.  Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.  Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *see also*, *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").  Further, plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one.  "A preliminary injunction is an extraordinary remedy

which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiff may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate his entitlement to injunctive relief.

This already stringent burden is even more difficult to meet where, as here, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case but to obtain affirmative relief. As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Because of this, courts have identified three types of particularly disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. University of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Motions seeking such preliminary injunctive relief most be more closely scrutinized than the already-disfavored motion for preliminary junction which seeks to maintain the status quo. *See id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988).

With respect to the likelihood of success factor, plaintiff need not show that he is sure to prevail on any of his claims. However, he must, "at a minimum, show[] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if

the injunction is issued." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th

Cir. 1997) (internal quotation omitted); *see also*, *Gaston Drugs, Inc. v. Metropolitan Life Ins. Co.*,

823 F.2d 984, 988 & n.2 (6th Cir. 1987).  With respect to the harm factor, the harm that would result

in the absence of the injunction must be irreparable, not merely substantial.  As the Supreme Court

has noted,

> "The key word in this consideration is *irreparable*.  Mere injuries, however
> substantial, in terms of money, time and energy necessarily expended in the absence
> of a stay, are not enough.  The possibility that adequate compensatory or other
> corrective relief will be available at a later date, in the ordinary course of litigation,
> weighs heavily against a claim of irreparable harm."

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259

F.2d 921, 924 (D.C. 1958)).  In short, "[a] plaintiff's harm from the denial of a preliminary

injunction is irreparable if it is not fully compensable by monetary damages."  *Overstreet*, 305 F.3d

at 578.  In evaluating the harm facing the plaintiffs, the Court must evaluate three factors: "(1) the

substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the

proof provided."  *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th

Cir. 1987).

Finally, in addition to these four factors which govern all preliminary injunctions, plaintiff's

suit challenging the conditions of confinement is subject to § 802 of the Prison Litigation Reform

Act, which in relevant part provides:

> Preliminary injunctive relief must be narrowly drawn, extend no further than
> necessary to correct the harm the court finds requires preliminary relief, and be the
> least intrusive means necessary to correct that harm. The court shall give substantial
> weight to any adverse impact on public safety or the operation of a criminal justice
> system caused by the preliminary relief and shall respect the principles of comity set
> out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).[2]

2.    *Analysis*

Here, plaintiff has failed to meet the heavy burden of establishing his entitlement to preliminary injunctive relief that would provide him with affirmative relief rather than merely maintaining the status quo.  With respect to the likelihood of success factor, as discussed below in connection with defendants' motions for summary judgment, defendants are entitled to summary judgment with respect to the bulk of plaintiff's claims.  As to any claims remaining, plaintiff has not shown a strong likelihood of success as necessary to justify a preliminary grant of affirmative relief.  Nor has petitioner shown that he will suffer irreparable harm in the absence of an injunction.  *See Jones v. Caruso*, No. 10-11604, 2011 WL 3961903, at *2 (Aug. 15, 2011) (Whalen, M.J.) (because parole is entirely within the Board's discretion, no irreparable harm could be shown based on Board's alleged reliance on false information in denying parole), *magistrate judge's report and recommendation adopted*, 2011 WL 3961891 (E.D. Mich. Sept. 8, 2011) (Steeh, J.).  As explained below, petitioner cannot show that defendants have been deliberately indifferent to any serious medical need, and plaintiff has failed to show that any injury caused by defendants' alleged conduct cannot be remedied by an award of money damages.  With respect to the remaining factors, the balance of harms and the public interest weigh against a grant of injunctive relief.  The injunctive relief which plaintiff seeks "would interfere with the defendants' strong interest in the enforcement of their rules and policies.  '[P]roblems of prison administration are peculiarly for resolution by

---

[2]The referenced principles of comity prevent a court from ordering "any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless—(i) Federal law requires such relief to be ordered in violation of State or local law; (ii) the relief is necessary to correct the violation of a Federal right; and (iii) no other relief will correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(B).

prison authorities and their resolution should be accorded deference by the courts.'" *Blair v. Loomis* 1 F. Supp. 2d 769, 773 (N.D. Ohio 1998) (quoting *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (citations omitted)).  The public likewise has a strong interest in the safe and effective operation of prisons and the parole system.  *See Blair*, 1 F. Supp. 2d at 773; *Jones*, 2011 WL 3961903, at *2-*3.  Accordingly, the Court should deny plaintiff's motions for a preliminary injunction.

C.     *Defendants' Motions for Summary Judgment*

Also pending before the Court are two motions for summary judgment filed by defendants. In the first, defendants Heyns, Straub, Combs, Brown, DeBoer, Price, Heinritz, and Bull-Ehinger seek summary judgment.  Specifically, defendants contend that they are entitled to summary judgment because: (1) defendant Heyns, Straub, Combs, and Bull-Ehinger had no personal involvement in the alleged constitutional violations; (2) defendants Brown, DeBoer, and Price had no personal involvement apart from the denials of parole to plaintiff, and with respect to those claims relating to the parole denial plaintiff cannot establish a constitutional violation; and (3) defendant Heinritz did not have any personal involvement in the alleged constitutional violations and did not retaliate against plaintiff.  Defendants also contend that they are entitled to qualified immunity.  In the second motion, defendant Luckey moves for summary judgment on the grounds that plaintiff cannot establish a retaliation claim and that defendant is entitled to qualified immunity. For the reasons that follow, the Court should conclude that the moving defendants are entitled to summary judgment on all of plaintiff's federal constitutional claims.[3]

---

[3]Defendants have not moved for summary judgment on plaintiff's ADA and Rehabilitation Act claims, nor have they moved for summary judgment on any state law claims plaintiff may be asserting. I therefore do not address these claims.  I also do not address any of the claims asserted against defendants Morrill and Dreyer, as their recently filed motion for summary judgment is not yet ripe for

1.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

consideration.

11

587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  *Sutherland*, 344 F.3d at 613.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994).  it is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior.  See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right."  *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.  In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally

12

involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

      2.    *Parole Related Claims*

A number of plaintiff's claims are directed at the denials of parole by the Board, or the procedures used leading up to those denials.  The Court should conclude that defendants are entitled to summary judgment on these claims.

### a. Ex Post Facto Violation (Compl, ¶¶ 75-76, 99)

Plaintiff first alleges that the Board defendants have violated the Ex Post Facto Clause by requiring that he participate in a sex offender program, and by placing new emphasis on the public safety factor in making parole determinations.  Plaintiff cannot establish a constitutional violation with respect to these claims.

Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws.  In *Collins v. Youngblood,* 497 U.S. 37 (1990), the Supreme Court explained that the Ex Post Facto Clause of the U.S. Constitution incorporated "a term of art with an established meaning at the time of the framing of the Constitution."  *Id*. at 41.  In connection with this interpretation, the Court held that the Clause targets laws that "retroactively alter the definition of crimes or increase the punishment for the criminal act." *Collins,* 497 U.S. at 43 (*citing to Calder v. Bull,* 3 U.S. (Dall.) 386, 391-392 (1798)(Chase, J.); *Beazell v. Ohio,* 269 U.S. 167, 169-170 (1925)).  To fall within the *ex post facto* prohibition, a law must be retrospective, *i.e.*; "it must apply to events occurring before its enactment" and it "must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24,

13

29 (1981). As the Supreme Court has explained, "[o]ne function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner v. Jones*, 529 U.S. 244, 249-50 (2000) (citation omitted). Not every retroactive change in the parole laws, however, constitutes an ex post facto violation. As the Supreme Court observed, "the Ex Post Facto Clause should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.'. . . The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Id.* at 252 (citation omitted) (quoting *California Dep't of Corrections v. Morales*, 514 U.S. 499, 508 (1995)). Thus, the "controlling inquiry" is "whether retroactive application of the change in . . . law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* at 250 (quoting *Morales*, 514 U.S. at 509.

Here, plaintiff does not point to any retroactive change in the law, but rather to an allegedly retroactive change in how the Board chooses to exercise its discretion. Neither the requirement to complete a SOP nor the reliance on public safety constitutes a change in any law; rather, they reflect policy changes by the Board in how it chooses to weigh the wide variety of factors that bear on an inmate's suitability for parole. Particularly on point is the Second Circuit's decision in *Barna v. Travis*, 239 F.3d 169 (2d Cir. 2001). In that case, the prisoner argued that the Ex Post Facto Clause was violated by the application of amended parole guidelines in her case. The court rejected this argument, noting that the New York parole statutes gave the parole board complete discretion in granting or denying parole, and that the guidelines were, pursuant to statute, created by the board

14

for the purpose of aiding in its exercise of discretion. *See id*. at 171. In light of this scheme, the

court rejected the prisoner's ex post facto argument, explaining:

> Nor is there merit in plaintiffs' claims that State parole procedures adopted
> after they were incarcerated violate the Ex Post Facto Clause. That Clause applies
> only to "legislative action that retroactively 'punishes as a crime an act previously
> committed, which was innocent when done,' 'makes more burdensome the
> punishment for a crime, after its commission,' or 'deprives one charged with crime
> of any defense available according to law at the time when the act was committed.'"
> *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir.1997) (quoting *Beazell v. Ohio*, 269 U.S.
> 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). A law that is merely procedural and
> does not increase a prisoner's punishment cannot violate the Ex Post Facto Clause
> even when applied retrospectively. *See California Dep't of Corrections v. Morales*,
> 514 U.S. 499, 507-09, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).
>     The Ex Post Facto Clause does not apply to guidelines that do not create
> mandatory rules for release but are promulgated simply to guide the parole board in
> the exercise of its discretion. *See, e.g.*, *DiNapoli v. Northeast Regional Parole
> Commission*, 764 F.2d 143, 145-47 (2d Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct.
> 568, 88 L.Ed.2d 553 (1985). Such guidelines "are not 'laws' within the meaning of
> the ex post facto clause." *Id*. at 147; *Beltempo v. Hadden*, 815 F.2d 873, 875 (2d
> Cir.1987) (quoting *DiNapoli*).

*Id*. Michigan's parole guidelines, like those of New York considered in *Barna*, were created by the

Board pursuant to statute, and are designed to guide the Board in its exercise of discretion. And, like

the New York parole statutes, "Michigan's parole statute does not create a protected liberty interest

in parole because the statute does not place any substantive limitations on the discretion of the parole

board through the use of particularized standards that mandate a particular result." *Johnson v.

Renico*, 314 F. Supp. 2d 700, 712 (E.D. Mich. 2004) (Gadola, J.).

In short, it is clear that consideration of an inmate's participation in sex offender treatment

as a factor in a discretionary parole decision does not implicate the Ex Post Facto Clause. *See

Froman v. Peterson*, 74 Fed. Appx. 484, 486 (6th Cir. 2003); *Chambers v. Colorado Dep't of

Corrections*, 205 F.3d 1237, 1241-42 (10th Cir. 2000); *Neal v. Shimoda*, 131 F.3d 818, 826-27 (9th

Cir. 1997); *Shaffer v. Meyers*, 338 F. Supp. 2d 562, 564-66 (M.D. Pa. 2004), *aff'd*, 163 Fed. Appx.

15

111 (3d Cir. 2006).  It is equally clear that neither a Board's change in philosophy nor its change in

the regulations it uses to guide its own exercise of discretion implicates the Ex Post Facto Clause.

*See Partridge v. Davis*, No. 05-74616, 2007 WL 2852340, at *3 (E.D. Mich. Sept. 30, 2007) (Hood,

J.); *Shultz v. Rubitschun*, No. 1:05-CV-697, 2005 WL 3262435, at *6 (W.D. Mich. Nov. 30, 2005);

*cf. Garner*, 529 U.S. at 253 (citation omitted) ("[T]o the extent there inheres in ex post facto doctrine

some idea of actual or constructive notice to the criminal before commission of the offense of the

penalty for the transgression, we can say with some assurance that where parole is concerned

discretion, by its very definition, is subject to changes in the manner in which it is informed and then

exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt

based on experience.").  Accordingly, the Court should conclude that defendants are entitled to

summary judgment on plaintiff's ex post facto claims.

### b.  Due Process (Compl., ¶¶ 82, 94)

Plaintiff also alleges that defendants' violated his right to due process of law in connection

with the parole proceedings.  The Court should conclude that defendants are entitled to summary

judgment on this claim.

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or

property, without due process of law[.]"  U.S. CONST. amend XIV, § 1.  By its terms, therefore, the

particular procedures required by the clause apply only to deprivations of "life, liberty, or property;"

they do not apply to deprivations of other interests.  *See Board of Regents v. Roth*, 408 U.S. 564, 569

(1972) ("The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property.").  In this case,

petitioner has no liberty or property interest in being released on parole or in participating in prison

programs, and thus the Due Process Clause does not require the state to follow any particular procedures. "A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See generally*, *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force "[t]he [D]ue [P]rocess [C]lause does not guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995); *accord Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Mayberry v. Hudson*, No. 92-2358, 1993 WL 147575, at *1 (6th Cir. May 5, 1993) (citing *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987)). Thus, petitioner has a protected liberty interest only if Michigan law creates such an interest.

In the parole context, whether a state law creates a protected liberty interest "turn[s] on the presence or absence of language creating 'substantive predicates' to guide discretion." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). Thus, to create a liberty interest the regulations at issue must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow[.]" *Id.* at 463; *accord Marshall*, 57 F.3d at 672. Under Michigan law, "a prisoner's release on parole is discretionary with the parole board." MICH. COMP. LAWS § 791.234(8); *see also*, *People v. Moore*, 164 Mich. App. 378, 387-88, 417 N.W.2d 508, 512 (1987). Thus, "Michigan's state statutes do not create an explicit entitlement to parole," and thus do not give rise to a protected liberty interest. *White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) (considering federal prisoner's challenge to denial of parole hearing by Michigan authorities); *accord Mayberry*, 1993 WL 147575, at *1 (same); *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994) (Gilmore, J., adopting Report of Morgan, M.J.) (same); *cf. Marshall*, 57 F.3d at 672-73. As the Sixth Circuit

has explained:

> After *Olim* [*v. Wakinekona*, 461 U.S. 238 (1983)] and *Inmates* [*of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir. 1991)], it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights[.] . . . The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim*, 461 U.S. at 249. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such rules as a matter of *federal* due process.

*Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (footnote and parallel citation omitted) (emphasis in original); *see also*, *Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (Tarnow, J.); *Glover v. Michigan Parole Bd.*, 460 Mich. 511, 520-21, 596 N.W.2d 598, 603-04 (1999).

Likewise, plaintiff has no constitutional right to participate in any prison rehabilitation programs. It is well established that "[p]risoners have no constitutional right to rehabilitation, education, or jobs." *Argue v. Hofmayer*, 80 Fed. Appx. 427, 429 (6th Cir. 2003) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *see also*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Thus, "participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee." *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

In the absence of a liberty or property interest protected by the Due Process Clause, no process is due and even wholly arbitrary actions by state officials are insufficient to establish a due process violation. *See Zorzi v. County of Putnam*, 30 F.3d 885, 895 (7th Cir. 1994); *Carter v. McCaleb*, 29 F. Supp. 2d 423, 429 (W.D. Mich. 1998) ("In the absence of a liberty interest, no process is *constitutionally* due."). Because plaintiff has no constitutional right to either participate

18

in the SOP or to parole, he cannot show defendants' alleged actions denied him due process of law. *See Allen v. Rubitschun*, No. 4:06-cv-148, 2007 WL 951383, at *1 (W.D. Mich. Mar. 27, 2007) (because there is no right to rehabilitative programming or parole, plaintiff failed to state due process claim against prison officials who denied him access to rehabilitative program which resulted in Board's subsequent denial of parole based on his failure to complete the program).

Nor can plaintiff show that he was denied his due process rights by defendants' alleged provision of inaccurate information to the Board. Reliance on inaccurate information by the Board in denying parole, if it in fact happened, did not violate plaintiff's constitutional rights, *see Caldwell v. McNutt*, 158 Fed. Appx. 739, 741 (6th Cir. 2006), and in the absence of a protected liberty interest there is no due process violation even by state officials' deliberate lies. *See Sullivan v. Brown*, 544 F.2d 279, 282 (6th Cir. 1976) (citing *Bishop v. Wood*, 426 U.S. 341, 349 n.1 (1976)) ("Without a 'property' or 'liberty' interest protected by the due process clause, plaintiff would have no federally protected right, even if it be assumed that the statement of reasons or charges placed in her personnel file were false."); *Oliver v. Morris*, No. 6:06cv286, 2007 WL 869562, at *12 (E.D. Tex. Mar. 20, 2007) ("Even if the Defendants in this lawsuit relied on false information in recommending that Oliver be moved out of safekeeping, this is not a constitutional violation because Oliver had no protected liberty or property interest in his custodial classification.").

In short, plaintiff has failed to show that defendants' alleged actions implicated any liberty interest protected by the Due Process Clause. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's due process claim.

### c. Equal Protection (Compl., ¶ 91-92)

Plaintiff also contends that the Board defendants denied him parole on the basis of his race.

The Court should conclude that defendants are entitled to summary judgment on this claim.

"An equal protection claim must assert that the plaintiff suffered class-based discrimination." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (citing *McClesky v. Kemp*, 481 U.S. 249, 292 (1987)).  Thus, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).  Suspect and quasi-suspect classes under the Equal Protection Clause include those based on race, religion, alienage, national origin, ancestry, gender, and illegitimacy.  *See Owens v. Ventura County Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999).   In his complaint, plaintiff alleges specific discriminatory acts on account of his race taken by defendant Morrill.  He does not, however, allege any specific facts that the Board defendants acted with a racially discriminatory animus in denying parole.  Nor does he provide any evidence to support a claim that the defendants (apart from Morrill) treated him less favorably than similarly situated white inmates.   With respect to the moving defendants, plaintiff "has failed to . . . state how he was treated differently from others similarly situated." *Porter v. Soice*, 24 Fed. Appx. 384, 387 (6th Cir. 2001). Plaintiff's "conclusory allegations without any factual support fail[] to state an equal protection claim."  *Turnboe v. Gundy*, 25 Fed. Appx. 292, 293 (6th Cir. 2001).  Accordingly, the Court should conclude that the moving defendants are entitled to summary judgment on this claim.

### d.  Retaliation (Compl., ¶ 91-92)

Finally, plaintiff claims that he was denied parole in retaliation for his attempts to obtain mental health treatment and his complaints regarding that treatment.  The Court should conclude that defendants are entitled to summary judgment with respect to this claim.

In order to succeed on a retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.). As the Sixth Circuit has explained, "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (Rosen J., adopting Report of Komives, M.J.). Here, plaintiff has offered no specific allegations or any evidence to support his claim that the denial of his parole was causally connected to any constitutionally protected activity. Plaintiff's claims against the moving defendants relate to his initial transfer and to the initial denial of parole. However, both the transfer and the initial denial of parole occurred prior to the complaints regarding the adequacy of his treatment that are alleged in the complaint. Thus, the sequence of events alleged in the complaint do not support a claim that defendants were motivated by plaintiff's protected activity in transferring him or denying him parole. Plaintiff's conclusory allegations of a retaliatory motive unsupported by any evidence to support his claim are insufficient to create a genuine issue of material fact. Accordingly, the Court should grant the moving defendants summary judgment on this claim.

     3.    *Medical Treatment Claims*

Plaintiff also raises two claims challenging the adequacy of the mental health treatment that he received–an Eighth Amendment deliberate indifference claim and a more general due process

claim. The Court should conclude that the moving defendants are entitled to summary judgment on these claims.

### a. Deliberate Indifference (Compl., ¶¶ 77, 80, 84-86, 96-97)

Plaintiff contends that defendants exhibited deliberate indifference to his mental health needs by placing him in the care of defendant Morrill and not providing him appropriate sex offender treatment. This claim fails for several reasons.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v.*

22

*Palmer*, 468 U.S. 517, 526-27 (1984)).  If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment.  *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and a subjective test.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these elements by a preponderance of the evidence.  *See Brooks*, 39 F.3d at 127-28.

Here, plaintiff cannot establish that he had a serious medical need.  Plaintiff does not allege, nor does the record suggest, that plaintiff suffered from any serious mental impairment or illness that required mental health treatment.  Rather, plaintiff sought to participate in counseling as part of a sex offender treatment program in order to increase his suitability for parole.  "[T]he mere fact that the plaintiff[] [is a] convicted sexual offender[] does not mean that [he has] psychological disorders or that [he is] in need of psychiatric treatment."  *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation omitted).  In the absence of a demonstrated psychological disorder, plaintiff did not have a "serious medical need," and defendants alleged failure to provide appropriate sex offender treatment does not raise an issue under the Eighth Amendment.  *See Hunt v. Colorado Dep't of Corrections*, 194 Fed. Appx. 492, 495 (10th Cir. 2006); *Riddle*, 83 F.3d at 1204; *Ramos v. Vaughn*, No. 94-2596, 1995 WL 386577, at *5-*6 (E.D. Pa. June 27, 1995), *aff'd*, 85 F.3d 612 (3d Cir. 1996); *Patterson v. Webster*, 760 F. Supp. 150, 154 (E.D. Mo. 1991).  Further, it is well established that "[d]enying parole and requiring an inmate to serve his entire sentence is punishment,

23

but it does not constitute cruel and unusual punishment.  The denial of parole is a disappointment rather than a punishment of cruel and unusual [pro]portions." *Leach v. Owens*, No. 2010 WL 5266063, at * (W.D. Tex. Dec. 15, 2010) (citations omitted) (citing *Baumann v. Arizona Dep'' of Corrections*, 754 F.2d 841, 846 (9th Cir.1985); *Craft v. Texas Bd. of Pardons and Paroles*, 550 F.2d 1054 (5th Cir.1977)); *see also, Farid v. Bouey*, 554 F. Supp. 2d 301, 323 (N.D.N.Y. 2008). Likewise, "[t]he law is clear that limitations on, or the denial of, . . . rehabilitation programs do not inflict unnecessary or wanton pain and therefore do not constitute cruel and unusual punishment." *McQuillion v. Rushen*, 639 F. Supp. 420, 424 (N.D. Cal. 1986); *see also, Gawloski v. Dallman*, 803 F. Supp. 103, 112 (S.D. Ohio 1992).  Therefore, neither defendants alleged failure to provide plaintiff with adequate sex offender treatment nor the subsequent denial of parole raises a claim under the Eighth Amendment. *See Moore v. Michigan Dept. of Corrections*, No. 1:07-cv-756, 2007 WL 3124649, at *3 (W.D. Mich. Oct. 25, 2007).

Further, even if plaintiff could establish a serious medical need, plaintiff cannot establish that defendants were deliberately indifferent to his need.  As the Seventh Circuit has explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense:  disregarding a risk of danger so substantial that knowledge of the danger can be inferred.  Such disregard is tantamount to intending that the injury occur." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient).  The moving defendants' roles are limited to their transfer of plaintiff and

24

their denial of parole.  Each of the moving defendants avers that he or she has no role in providing sex offender treatment, and plaintiff has provided no evidence to contradict these averments. Further, none of the defendants' actions resulted in a denial of treatment; it is undisputed that plaintiff received treatment from defendant Morrill.  While plaintiff challenges the adequacy of that treatment, he has offered nothing to show that the moving defendants had any role in how defendant Morrill conducted plaintiff's treatment.  Thus, even if plaintiff could establish the existence of a serious medical need, he cannot show that any of the moving defendants were deliberately indifferent to that need.  Accordingly, the Court should conclude that the moving defendants are entitled to summary judgment on plaintiff's deliberate indifference claim.

### b.  Due Process (Compl., ¶ 82)

Plaintiff also appears to assert an independent due process claim based on the alleged lack of adequate treatment.  Defendants are entitled to summary judgment on any such claim. Because the Eighth Amendment provides a specific constitutional standard for assessing plaintiff's claim, "[t]he validity of the claim must . . . be judged by reference to [this] specific constitutional standard," rather than under the Due Process Clause of the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  As noted above, plaintiff's claim fails under the Eighth Amendment, and he may not assert an independent medical care claim under the Due Process Clause.  *See Dodson v. Wilkinson*, 304 Fed. Appx. 434, 438 (6th Cir. 2008); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995).  Accordingly, the Court should grant summary judgment to defendants on plaintiff's medical claims under the Due Process Clause.

### 4.    Equal Protection (Compl., ¶¶ 80-81)

Plaintiff alleges that defendants discriminated against him on the basis of his race in violation

of the Equal Protection Clause. As explained in connection with plaintiff's parole claims, apart from his allegations against defendant Morrill plaintiff does not specifically allege or provide any evidence to show that any of the moving defendants treated him differently than any similarly situated white inmate or that their actions were based on a racially discriminatory animus. Accordingly, the moving defendants are entitled to summary judgment with respect to plaintiff's equal protection claim.

5.   *Retaliation and Conspiracy Claims (Compl., ¶¶ 77-78, 88-89, 102-03 and Second Supplement to Complaint)*

Plaintiff also asserts generally that defendants retaliated against him and engaged in a conspiracy to deprive him of his rights. As explained in connection with plaintiff's parole claims, plaintiff has not sufficiently alleged or shown a causal connection between any of his constitutionally protected activity and the alleged actions by the moving defendants, and his conclusory allegations of a retaliatory motive are insufficient to withstand summary judgment. Plaintiff's allegation of a conspiracy between the defendants to deprive him of his rights fails for the same reason. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim[.]" *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Plaintiff's conclusory allegations that defendants conspired to deprive him of his rights, unsupported by any specific allegations, are insufficient to withstand dismissal. *See Grooms v. Marshall*, 142 F. Supp. 927, 933 (S.D. Ohio 2001); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 757 (E.D. Mich. 2001) (Lawson, J.); *Nedea v. Voinovich*, 994 F. Supp. 910, 918 (N.D. Ohio 1998).

With respect to defendant Luckey, plaintiff more specifically alleges that Luckey retaliated against him by failing to put him on the library call-out. Defendant Luckey avers in the affidavit

26

attached to his motion that plaintiff was not granted a call-out on December 19, 2011, because it would have conflicted with plaintiff's job assignment, and that each of plaintiff's five requests for legal copies were each processed.  In his response to defendant Luckey's motion for summary judgment, plaintiff does not address these averments, nor does he provide any evidence to contradict Luckey's averments.  Defendant Luckey's uncontradicted affidavit suffices to show that he "would have taken the same action in the absence of the protected conduct," *Thaddeus-X*, 175 F.3d at 399, and thus defendant Luckey is entitled to summary judgment on plaintiff's retaliation claim.  *See Smith v. Campbell*, 250 F.3d 1032, 1039 (6th Cir. 2001).

D.      *Plaintiff's Motions for Judgment*

Also pending before the Court are four motions for judgment filed by plaintiff.  These motions seek judgment in favor of plaintiff on procedural grounds.  Specifically, in the four motions plaintiff contends that he is entitled to judgment because: (1) defendants filed to file an answer to the complaint; and (2) defendants failed to comply with Local Rule 58.1.  The Court should deny these motions.

1.      *Failure to Answer*

Plaintiff essentially seeks a default judgment against defendants based on their failure to answer the complaint in accordance with FED. R. CIV. P. 12.  Plaintiff is not entitled to a default judgment, for several reasons.

First, a default judgment is not available based on a defendant's failure to respond to the complaint where, as here, the plaintiff is a prisoner seeking relief under § 1983.  In part, the Prison Litigation Reform Act amended the Civil Rights of Institutionalized Persons Act to provide that "[a]ny defendant may waive the right to reply to any action brought by a prisoner confined in any

jail, prison, or other correctional facility under section 1983 of this title or any other Federal law."

42 U.S.C. § 1997e(g)(1).  Further, under this provision "[n]o relief shall be granted to the plaintiff

unless a reply has been filed."  *Id*.  As the Supreme Court has explained, pursuant to this provision

"unlike in the typical civil case, defendants do not have to respond to a complaint covered by the

PLRA until required to do so by the court, and waiving the right to reply does not constitute an

admission of the allegations in the complaint."  *Jones v. Bock*, 549 U.S. 199, 213-14 (2007).  Thus,

where a defendant has failed to respond to a civil rights complaint brought by a prisoner, the Court's

sole power is to order the defendant to file a reply.  *See* 42 U.S.C. § 1997e(g)(2).  However, under

the plain terms of subsection (1) the Court may not afford plaintiff any relief, including a default

judgment, until after a reply has been filed.  In other words, "[u]nder the explicit language of §

1997e(g)(1), prisoner plaintiffs filing suits under § 1983 are not entitled to entry of default judgment

against a defendant who has been properly served, but nevertheless has not filed any reply."

*Lafountain v. Martin*, No. 1:07-cv-76, 2009 WL 4729933, at *4 (W.D. Mich. Dec. 3, 2009) (citing

cases); *see also*, *Young v. Brown*, 328 Fed. Appx. 534, 535 (9th Cir. 2009); *Friske v. Scutt*, No. 07-

CV-13747, 2008 WL 2705505, at *1 (E.D. Mich. July 10, 2008) (Rosen, J., adopting report of

Hluchaniuk, M.J.); *Olmstead v. Balcarcel*, No. 06-CV-14881, 2007 WL 2121937, at *3 (E.D. Mich.

July 24, 2007) (Steeh, J., adopting report of Pepe, M.J.).

Second, Rule 55 allows a court to enter judgment against a defendant where the defendant

has failed to plead or otherwise defend the claims pursuant to the Federal Rules.  FED. R. CIV. P.

55(b)(2).  "Trials on the merits are favored in the federal courts[.]"  *Berthelsen v. Kane*, 907 F.2d

617, 620 (6th Cir. 1990).  Accordingly, the Sixth Circuit has noted that "[j]udgment by default is

a drastic step which should be resorted to only in the most extreme cases."  *United Coin Meter Co.,*

*Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). Although defendants have not

filed an answer in accordance with Rule 12, they have responded to plaintiff's motions and filed

their own motions for summary judgment. They have therefore not failed to plead or "otherwise

defend" the claims. *See Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993), *aff'd*, 1994

WL 594637, at *4 (9th Cir. Oct. 31, 1994). Likewise, the failure of defendants to file an answer

does not preclude a ruling on their summary judgment motions. Rule 56 permits a party to file a

motion for summary judgment "at any time," and nothing in the Federal Rules of Civil Procedure

requires the filing of an answer before a court can rule on a summary judgment motion. *See Rashidi*,

818 F. Supp. at 1357 (citing *First Nat. Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)

(affirming a grant of summary judgment to a defendant who had never answered the complaint in

more than six years of litigation)).

       2.    *Local Rule 58.1*

       Plaintiff also contends that he is entitled to judgment because defendants failed to comply

with Local Rule 58.1. That rule provides the procedures for the entry of judgments and orders.

Plaintiff contends that defendants were required, within 7 days of their motions for summary

judgment, to provide a copy of the proposed judgment or order on him. *See* E.D. MICH. LR 58.1(c).

However, subdivision (c) provides merely one alternative way in which the Court may enter a

judgment or order. The opening paragraph of the rule explicitly provides that "[t]he court may enter

a judgment or order by one of the following methods," and then lists the ways in which judgment

may be entered. Defendants have moved for summary judgment; they have not submitted a

proposed order under Rule 58.1(c) nor have they been ordered to do so by the Court. *See, e.g.*,

*United States v. Kraljevich*, 364 F. Supp. 2d 655, (E.D. Mich. 2005) (granting relief sought by

plaintiff and ordering plaintiff to submit a proposed order under Rule 58.1(c)).  And in any event, while a failure to comply with Rule 58.1 could provide a basis for the Court to decline to enter a proposed judgment, nothing in the Rule suggests that plaintiff would be entitled to a judgment in his favor based on defendants' failure to comply with the Rule.  Accordingly, the Court should deny plaintiffs' motions for judgment.

E.     *Conclusion*

In view of the foregoing, the Court should deny plaintiff's two motions for preliminary injunction and his four motions for judgment, and should grant defendants' two motions for summary judgment.  Specifically, the Court should grant summary judgment to defendants Heyns, Straub, Combs, Brown, DeBoer, Price, Heinritz, Bull-Ehinger, and Luckey with respect to each of the federal constitutional claims asserted by plaintiff.  If the Court accepts this recommendation, the following claims will remain pending: (1) all of plaintiff's claims against defendants Morrill and Dreyer; (2) plaintiff's Rehabilitation Act and ADA claims against all defendants; and (3) any state law claims plaintiff is asserting against all defendants.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

   Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

            s/Paul J. Komives       
            PAUL J. KOMIVES
            UNITED STATES MAGISTRATE JUDGE

Dated: 1/10/13

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail and on January 10, 2013

      s/Eddrey Butts   
      Case Manager