UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK SMITH,

        Plaintiff,

        v.

DANIEL HEYNS, DENNIS STRAUB,
THOMAS COMBS, CHARLES BROWN,
STEPHEN DEBOER, JANE PRICE, JOEL
MORRILL, MARYANN BULLEHANGER,
LAURA HEINRITZ, J. LUCKY, and C. DYER,

        Defendants.

                                  /

CASE NO. 2:12-CV-11373
JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON: (1) DEFENDANTS MORILL AND
DREYER'S MOTION FOR SUMMARY JUDGMENT (docket #59); (2) PLAINTIFF'S
SECOND MOTION FOR LEAVE TO APPEAL (docket #65); (3) MDOC DEFENDANTS'
SECOND MOTION FOR SUMMARY JUDGMENT (docket #69); and (4) PLAINTIFF'S
EX PARTE MOTION TO STAY SUMMARY JUDGMENT (docket #70)**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
      A.    Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
      B.    Plaintiff's Motion to Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
      C.    Defendants' Motions for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
            1.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
            2.    Defendant Morrill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
                  a. Conspiracy/Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
                  b. Medical Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
                  c. False Statements in Termination Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
                  d. Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
            3.    Defendant Dreyer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
            4.    ADA and Rehabilitation Act Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
            5.    State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
      D.    Plaintiff's Second Motion to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
            1.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28
            2.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
      E.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

I.      RECOMMENDATION: The Court should deny plaintiff's motion to stay summary judgment, deny plaintiff's second motion for leave to amend, and grant defendants' motions for summary judgment.  Accordingly, the Court should grant summary judgment to defendants with respect to plaintiff's claims against defendants Morill and Dreyer and with respect to his ADA and Rehabilitation Act claims against all defendants, and should decline to exercise supplemental jurisdiction over any state law claims plaintiff is asserting

II.     REPORT:

A.      *Procedural Background*

Plaintiff Frederick J. Smith commenced this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983.  Plaintiff is a state prisoner, currently serving sentences imposed as a result of his 1979 convictions for unarmed robbery and second-degree criminal sexual conduct, and his 1984 convictions for first-degree criminal sexual conduct and felony-firearm.  Defendants are:  Daniel Heyns, Director of the Michigan Department of Corrections (MDOC); Dennis Straub, former Deputy Director of the Correctional Facilities Administration (CFA); Thomas Combs, Director of the Michigan Parole Board ("the Board"), and Board members Charles Brown, Stephen DeBoer, and Jane Price; Mary Ann Bull-Ehinger, a Community Health Services Manager at the Parnall and Cooper Street Correctional Facilities; Laura Heinritz, a Security Classification Director for the CFA;  and James Luckey and Craig Dreyer, librarians at the Cooper Street Correctional Facility.

Plaintiff's allegations revolve around his consideration for parole and his participation in a Sex Offender Program (SOP).  Plaintiff alleges that he attended a parole interview conducted by defendant Brown on January 4, 2010.  At that time, plaintiff indicated that he maintained his

2

innocence, was appealing his case to the United States Supreme Court, and refused to participate in an SOP.  According to plaintiff, Brown informed him that he could not grant plaintiff parole because plaintiff would not participate in SOP group therapy.  *See* Compl., ¶¶ 14-16.  Plaintiff was denied parole on March 26, 2010.  *See id.*, ¶ 17.  On April 2, 2010, plaintiff spoke with Gus Harrison Correctional Facility psychologist Dickenson about participating in the SOP at Gus Harrison.  Dickenson informed him that he would be scheduled for an interview.  *See id.*, ¶ 18.  On April 8, plaintiff wrote a letter to defendant Straub, asking where his name was on the SOP waiting list.  Plaintiff alleges that defendant Heinritz responded to his letter on April 19 by threatening plaintiff and suggesting he would be punished for misspelling defendant Straub's name.  *See id.*, ¶¶ 19-20.  Plaintiff was interviewed by Dickenson on May 30, 2010, and was told that his name was at the top of the waiting list and that he would begin group therapy on June 4.  *See id.*, ¶ 23.

On June 3, 2010, one day prior to the start of his scheduled therapy, plaintiff was transferred from the Gus Harrison Correctional Facility, first to the Parnall facility and then to the Cooper Street facility.  Shortly after his arrival at Parnall plaintiff contacted psychologist Small, who assured him that he would begin group therapy soon.  Plaintiff was subsequently scheduled to begin group therapy at Parnall.  However, on July 15, 2010, plaintiff was transferred from Parnall to the Cooper Street Facility.  *See id.*, ¶¶ 25-30.  Once in the Cooper Street facility, plaintiff participated in group and individual therapy sessions with defendant Morrill.  Plaintiff alleges that Morrill treated him and other African-American inmates different than similarly situated white inmates, repeatedly threatened to give him bad reports or terminate him from the SOP, and made sexual advances toward him.  *See id.*, ¶¶ 31-45.  On March 25, 2011, plaintiff was terminated from the SOP.  He alleges that the Termination Report contained false and inaccurate information that defendant Morrill refused

to remove, but that she removed information from the termination reports of white inmates. *See id.*, ¶ 46. Plaintiff filed a number of grievances or complaints regarding these matters. *See id.*, ¶¶ 54-65.

Plaintiff's complaint asserts nine overlapping counts, each asserting various claims. Specifically, plaintiff asserts the following constitutional violations:

- violation of the Ex Post Facto Clause by the requirement that he participate in an SOP as a condition of receiving parole, *see id.*, ¶¶ 75-76, and by the Board's reliance on public safety concerns in denying parole, *see id.*, ¶ 99;

- deliberate indifference to his serious medical needs in violation of the Eighth Amendment by the failure to allow him to obtain mental health treatment at the Parnall facility, and requiring him to obtain treatment from defendant Morrill, *see id.*, ¶¶ 77, 80, 84-86, 96-97;

- retaliation against him for attempting to exercise his right to obtain medical treatment, and a conspiracy to retaliate against him by the defendants, in violation of the First Amendment, *see id.*, ¶¶ 77-78, 88-89.

- discrimination on the basis of race in violation of the Equal Protection Clause by defendants' failure to allow him to be treated at the Parnall facility and instead transferring him to be treated by defendant Morrill at the Cooper Street facility, and racial discrimination by defendant Morill, *see id.*, ¶¶ 80-81;

- violation of his rights to procedural and substantive due process based on the failure to provide adequate mental health treatment, the false statements in his Termination Report, and his subsequent ineligibility for parole, *see id.*, ¶ 82;

- improper denial of parole based on racial discrimination and retaliation for the exercise of plaintiff's First Amendment rights; *see id.*, ¶¶ 91-92;

- denial of due process by the Board's failure to adhere to the guidelines governing parole; *see id.*, ¶ 94; and

- denial of access to the prison law library in retaliation for his exercise of his right to file grievances, *see id.*, ¶¶ 102-03.

In addition to his federal constitutional claims, plaintiff appears to assert claims under the Americans with Disabilities Act and state law claims, including a medical malpractice claim against defendant Morrill. Plaintiff seeks compensatory and punitive damages, as well as various forms of injunctive

4

relief.

On January 10, 2013, I entered an order granting plaintiff's motions to amend the complaint. By way of those motions, plaintiff added a claim explicitly asserting violations of § 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, as well as retaliation claims against defendant Luckey based on Luckey's alleged failure to allow him to use the law library and against unspecified defendants based on their continued harassment, including searching his cell. On the same date, I filed a Report addressing the various motions for summary judgment filed by the parties. In that Report, I recommended that the Court grant summary judgment to defendants Heyns, Straub, Combs, Brown, DeBoer, Price, Heinritz, Bull-Ehinger, and Luckey with respect to each of the federal constitutional claims asserted by plaintiff. If the Court accepted this recommendation, I noted, the following claims would remain pending: (1) all of plaintiff's claims against defendants Morrill and Dreyer (who had yet to be served at the time of the prior motions); (2) plaintiff's Rehabilitation Act and ADA claims against all defendants; and (3) any state law claims plaintiff is asserting against all defendants. On March 20, 2013, the Court entered an Order adopting my Report and granting defendants leave to file an additional motion for summary judgment with respect to the remaining claims.

The matter is currently before the Court on four motions filed by the parties. First, on January 8, 2013, defendants Morrill and Dreyer filed a motion for summary judgment, arguing that plaintiff's claims are without merit and that they are entitled to qualified immunity. Plaintiff filed a response to this motion on February 7, 2013. Second, on January 24, 2013, plaintiff filed a second motion for leave to amend (titled as a motion for leave to appeal). In this motion, plaintiff seeks to add a retaliation claim against defendant Luckey under the ADA. Third, on April 18, 2013,

5

defendants filed a second motion for summary judgment, addressing plaintiff's ADA, Rehabilitation Act, and state law claims.  Defendants argue that they are not subject to individual liability under the ADA and Rehabilitation Act, and that the Court should decline to exercise supplemental jurisdiction over any state law claims plaintiff is asserting.  Plaintiff filed a response to this motion on May 2, 2013.  Finally, on April 29, 2013, plaintiff filed a motion to stay summary judgment pending further discovery.  For the reasons that follow, the Court should deny plaintiff's motion to stay summary judgment, grant defendants' motions for summary judgment, and deny plaintiff's second motion to amend.[1]

B.     *Plaintiff's Motion to Stay*

In his motion to stay, plaintiff asks that the Court stay ruling on the pending motions for summary judgment pending further discovery.  The Court should deny this motion.

Defendants argue that they are entitled to qualified immunity.  As the Sixth Circuit has explained:

> The purpose of a qualified immunity defense is not only protection from civil damages but protection from the rigors of litigation itself, including the potential disruptiveness of discovery. *See Pierson v. Ray*, 386 U.S. 547 (1967); *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In fact, the Court in *Anderson v. Creighton* emphasized that "[o]ne of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'particularly disruptive of effective government.' " *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Harlow*, 457 U.S. at 817). . . .
>
> This Court has held on multiple prior occasions that, when faced with a motion based on qualified immunity, a district court can not avoid ruling on the issue. *See e.g.*, *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir.2002). In the case of *Skousen v. Brighton High School*, we concluded that a district court

---

[1]Although I have authority to determine plaintiff's motion to amend under 28 U.S.C. § 636(b)(1)(A), because the issues in that motion are related to the issues raised in defendants' second motion for summary judgment, I submit this recommendation regarding the motion in lieu of a determination of the matter.

committed legal error in dismissing a motion for summary judgement based on qualified immunity solely because discovery was not complete. See *Skousen*, 305 F.3d 520 (6th Cir.2002). We held that, because the defense of qualified immunity is a threshold question, if the defense is properly raised prior to discovery, the district court has a duty to address it. *Id.*

> Rather than dismiss the [summary judgment] motion because discovery was not complete, the district court was required to determine-prior to permitting further discovery-whether [Plaintiff's] complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established at the time of the alleged violation.

*Id.* at 527. Only after the court inquires into whether any facts material to Plaintiff's claims are genuinely at issue, and only upon a finding that material facts are in fact in dispute is a court at liberty to hold a motion for summary judgment in abeyance pending additional discovery. *Id.*

*Summers v. Leis*, 368 F.3d 881, 886-87 (6th Cir. 2004).

Further, even under the standards governing summary judgment motions a stay for further discovery is not appropriate. Rule 56(d) (formerly Rule 56(f)) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). As another court in this Circuit has explained:

> When a party opposing a motion for summary judgment believes that further discovery is needed to develop the issues addressed in the motion, that party must file an affidavit pursuant to Fed.R.Civ.P. 56(f) ("R.56(f)"), to "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Rule 56(f) provides as follows:
>> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
> Rule 56(f) is the means by which a party resisting a motion for summary

7

judgment fulfills the "obligation to inform the district court of his need for discovery
. . . ." *Cacevic*, 226 F.3d at 488 (quoting *Vance ex rel. Hammons v. United States*, 90
F.3d 1145, 1149 (6th Cir. 1996)). The party seeking additional discovery must
"affirmatively demonstrate . . . how postponement of a ruling on the motion will
enable him, by discovery or other means, to rebut the movant's showing of the
absence of a genuine issue of fact." *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th
Cir.1998) (internal quotation marks omitted).

> The filing of a Rule 56(f) affidavit is no mere formality:
>
>> We, like other reviewing courts, place great weight on the
>> Rule 56(f) affidavit, believing that "[a] party may not simply assert
>> in its brief that discovery was necessary and thereby overturn
>> summary judgment when it failed to comply with the requirement of
>> Rule 56(f) to set out reasons for the need for discovery in an
>> affidavit." The Second Circuit Court of Appeals has similarly
>> explained that "[a] reference to Rule 56(f) and to the need for
>> additional discovery in a memorandum of law in opposition to a
>> motion for summary judgment is not an adequate substitute for a Rule
>> 56(f) affidavit . . . and the failure to file an affidavit under Rule 56(f)
>> is itself sufficient grounds to reject a claim that the opportunity for
>> discovery was inadequate."
>
> *Cacevic*, 226 F.3d at 488 (quoting *Evans v. Technologies Applications & Serv. Co.*,
> 80 F.3d 954, 961 (4th Cir.1996)) (citations omitted) (alterations in original). "Where
> a party opposing summary judgment and seeking a continuance pending completion
> of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing
> an affidavit, there is no abuse of discretion in granting summary judgment if it is
> otherwise appropriate." *Id.*

*Gencorp, Inc. v. AIU Ins. Co.*, 304 F. Supp. 2d 955, 960 (N.D. Ohio 2004); *see also*, *Gettings v.*

*Building Laborers Local 310 Fringe Benefit Fund*, 349 F.3d 300, 305 (6th Cir. 2003); *Cacevic*, 226

F.3d at 488; *Evans*, 80 F.3d at 961.  Thus "a party may not simply assert in its brief that discovery

was necessary and thereby overturn summary judgment when it failed to comply with the

requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit."  *Evans*, 80

F.3d at 961 (internal quotation omitted); *see also*, *Whalen v. Century Communications*, No. 97-

16572, 1999 WL 109630, at *1 (9th Cir. Dec. 10, 1998) ("An inadequate discovery time argument

fails where the party complaining failed to take advantage of the procedural remedy offered in Rule

56(f).").

8

In his response to the first group of defendants' motion for summary judgment, plaintiff explicitly denied any need for further discovery. *See* Pl.'s Obj. to Def.s' Request for Grant of Summ. J., dated 8/28/12 (docket #40), at 12 (emphasis added) ("Plaintiff does *not* request under Rule 56(f), Fed. R. Civ. P. that this Court postpone its ruling until discovery is completed, but instead relies on the record . . . ."). Although plaintiff now makes a general claim that he needs further discovery to prosecute his action, he does not argue in his response to defendants' motions that further specific discovery is needed. Specifically, he does not point to any specific potential discovery which could result in proof in support of his retaliation claims and his equal protection claim against defendant Morrill.[2] Thus, plaintiff has failed to point to any additional evidence that discovery could uncover which would bear on the moving defendants' entitlement to dismissal. Further, plaintiff has failed to file an affidavit or declaration pursuant to Rule 56(d) detailing the need for further discovery. *See Short v. Oaks Correctional Facility*, 129 Fed. Appx. 278, 281-82 (6th Cir. 2005) (applying Rule 56(d) requirements to *pro se* plaintiff); *Summers*, 368 F.3d at 887. *See generally*, *Dicesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) (Rule 56(d) requirements apply to *pro se* parties).[3] Accordingly, the Court should deny plaintiff's petition for a stay.

_____

[2]These are the only two claims that are arguably dependent upon the factual record. As explained in this Report and my prior Report, the remainder of plaintiff's claims fail as a matter of law regardless of the facts. For instance, as explained below, plaintiff's ADA and Rehabilitation Act claims fail because individuals are simply not liable under these statutes. Similarly, as explained in my prior Report, plaintiff's parole related claims fail as a matter of law because no liberty interest protected by the Due Process Clause is implicated by Michigan's parole statutes, and his medical care claims fail as a matter of law because sex offender rehabilitation does not constitute a serious medical need under the Eighth Amendment.

[3]As the Sixth Circuit noted in *Cacevic*, some courts have held that a *pro se* party need not strictly comply with the technical requirements of Rule 56(d); thus, for example, a *pro se* brief which contains the information required by Rule 56(d) may suffice even in the absence of an affidavit. *See Cacevic*, 226 F.3d at 488-89. Here, however, plaintiff has provided the Court with none of the information required by Rule 56(d) to support his need for further discovery. Thus, as in *Cacevic*, the Court need not consider

C.     *Defendants' Motions for Summary Judgment*

Also pending before the Court are two motions for summary judgment filed by defendants. In the first, defendants Heyns, Straub, Combs, Brown, DeBoer, Price, Heinritz, and Bull-Ehinger seek summary judgment.   Specifically, defendants contend that they are entitled to summary judgment because: (1) defendant Heyns, Straub, Combs, and Bull-Ehinger had no personal involvement in the alleged constitutional violations; (2) defendants Brown, DeBoer, and Price had no personal involvement apart from the denials of parole to plaintiff, and with respect to those claims relating to the parole denial plaintiff cannot establish a constitutional violation; and (3) defendant Heinritz did not have any personal involvement in the alleged constitutional violations and did not retaliate against plaintiff.   Defendants also contend that they are entitled to qualified immunity.   In the second motion, defendant Luckey moves for summary judgment on the grounds that plaintiff cannot establish a retaliation claim and that defendant is entitled to qualified immunity. For the reasons that follow, the Court should conclude that the moving defendants are entitled to summary judgment on all of plaintiff's federal constitutional and statutory claims.

1.     *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."   *Hedrick v. Western Reserve Care Sys.*, 355 F.3d

---

whether some filing short of an affidavit would be sufficient because plaintiff "complied with neither the technical nor the substantive aspects of the rule."   *Cacevic*, 226 F.3d at 489.

444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact

is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52

(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must

view the evidence in a light most favorable to the non-movant as well as draw all reasonable

inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603,

613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

material fact as to an essential element of the non-moving party's case."  *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp.*,

477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)); *see also*, Fed. R. Civ. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving
> party for a jury to return a verdict for that party.  If the [non-movant's] evidence is
> merely colorable, or is not significantly probative, summary judgment may be
> granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). it is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also, Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

2.    *Defendant Morrill*

a.  *Conspiracy/Transfer*

Plaintiff alleges that defendant Morrill was part of a conspiracy, along with other defendants,

12

to transfer him from ARF and place him in her care for SOP treatment.  With respect to plaintiff's

conspiracy claim, in my prior Report I explained:

> "It is well-settled that conspiracy claims must be pled with some degree of specificity
> and that vague and conclusory allegations unsupported by material facts will not be
> sufficient to state such a claim[.]" *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.
> 1987).  Plaintiff's conclusory allegations that defendants conspired to deprive him
> of his rights, unsupported by any specific allegations, are insufficient to withstand
> dismissal.  *See Grooms v. Marshall*, 142 F. Supp. 927, 933 (S.D. Ohio 2001);
> *Dekoven v. Bell*, 140 F. Supp. 2d 748, 757 (E.D. Mich. 2001) (Lawson, J.); *Nedea
> v. Voinovich*, 994 F. Supp. 910, 918 (N.D. Ohio 1998).

R&R, dated 1/10/13, at 26.  This reasoning applies equally to plaintiff's conspiracy claim against

defendant Morrill.  Further, plaintiff cannot show that defendant Morrill was in any way responsible

for his transfer, or that the transfer itself violated his constitutional rights.  There is nothing to

support the claim that defendant Morrill had any role in, or ability to affect, plaintiff's transfer.  *See*

Michigan Dep't of Corrections Policy Directive 05.01.140 (Oct. 10, 2011) (governing

placement and transfer of prisoners).  And even if she did have some role, the Constitution does not

protect a prisoner against every change in the conditions of his confinement.  *See Meachum v. Fano*,

427 U.S. 215, 222 (1976).  A prisoner has no inherent constitutional right to be incarcerated in a

particular institution, *see id.* at 224, or to enjoy a particular security classification.  *See Montanye

v. Haynes*, 427 U.S. 236, 242 (1974).  Accordingly, the Court should grant summary judgment to

defendant Morrill on plaintiff's conspiracy and transfer claims.

### b.  Medical Care

Plaintiff next claims that defendant Morrill was deliberately indifferent to his serious medical

needs in violation of the Eighth Amendment.  The Eighth Amendment provides:  "Excessive bail

shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

U.S. Const. amend. VIII.  In its purest sense, the Eighth Amendment proscribes cruel and unusual

punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence.

14

*See Brooks*, 39 F.3d at 127-28.

Here, plaintiff cannot establish that he had a serious medical need. Plaintiff does not allege, nor does the record suggest, that plaintiff suffered from any serious mental impairment or illness that required mental health treatment. Rather, plaintiff sought to participate in counseling as part of a sex offender treatment program in order to increase his suitability for parole. "[T]he mere fact that the plaintiff[] [is a] convicted sexual offender[] does not mean that [he has] psychological disorders or that [he is] in need of psychiatric treatment." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation omitted). In the absence of a demonstrated psychological disorder, plaintiff did not have a "serious medical need," and defendant's alleged failure to provide appropriate sex offender treatment does not raise an issue under the Eighth Amendment. *See Hunt v. Colorado Dep't of Corrections*, 194 Fed. Appx. 492, 495 (10th Cir. 2006); *Riddle*, 83 F.3d at 1204; *Ramos v. Vaughn*, No. 94-2596, 1995 WL 386577, at *5-*6 (E.D. Pa. June 27, 1995), *aff'd*, 85 F.3d 612 (3d Cir. 1996); *Patterson v. Webster*, 760 F. Supp. 150, 154 (E.D. Mo. 1991). Further, it is well established that "[d]enying parole and requiring an inmate to serve his entire sentence is punishment, but it does not constitute cruel and unusual punishment. The denial of parole is a disappointment rather than a punishment of cruel and unusual [pro]portions." *Leach v. Owens*, No. 2010 WL 5266063, at * (W.D. Tex. Dec. 15, 2010) (citations omitted) (citing *Baumann v. Arizona Dep'' of Corrections*, 754 F.2d 841, 846 (9th Cir.1985); *Craft v. Texas Bd. of Pardons and Paroles*, 550 F.2d 1054 (5th Cir.1977)); *see also*, *Farid v. Bouey*, 554 F. Supp. 2d 301, 323 (N.D.N.Y. 2008). Likewise, "[t]he law is clear that limitations on, or the denial of, . . . rehabilitation programs do not inflict unnecessary or wanton pain and therefore do not constitute cruel and unusual punishment." *McQuillion v. Rushen*, 639 F. Supp. 420, 424 (N.D. Cal. 1986); *see also*, *Gawloski v. Dallman*, 803

F. Supp. 103, 112 (S.D. Ohio 1992).  Therefore, neither defendant Morrill's alleged failure to provide plaintiff with adequate sex offender treatment nor the subsequent denial of parole raises a claim under the Eighth Amendment.  *See Moore v. Michigan Dept. of Corrections*, No. 1:07-cv-756, 2007 WL 3124649, at *3 (W.D. Mich. Oct. 25, 2007).

Nor can petitioner show that defendant Morrill was deliberately indifferent.  As the Seventh Circuit has explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred.  Such disregard is tantamount to intending that the injury occur."  *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient).  Here, there is no question that plaintiff received SOP treatment from defendant Morrill.  Plaintiff contends only that the treatment was inadequate because it involved "behavioral modification" therapy (primarily the writing of autobiographies) that is not used by other psychologists.  Even assuming that petitioner's aspersions on behavioral modification therapy are true, and that defendant Morrill used such therapy, this is insufficient to establish that she was deliberately indifferent.  Plaintiff's complaint amounts to nothing more than a difference of opinion on the appropriate treatment, which falls far short of establishing deliberate indifference.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas,* 537 F.2d 857, 860-61 n.5 (6th Cir. 1976);

16

*see Estelle*, 429 U.S. at 107; *id*. at 105-06 (allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). In these circumstances, plaintiff cannot show that defendant Morrill was deliberately indifferent to his serious medical needs. Accordingly, the Court should grant summary judgment to defendant Morrill on plaintiff's Eighth Amendment claim.

### c. False Statements in Termination Report

Plaintiff next claims that defendant Morrill violated his rights by including false statements in his termination report, which in turn resulted in him being denied parole. As I explained in my prior Report, plaintiff had no constitutional right either to parole or to participate in SOP treatment and thus even wholly arbitrary actions such as the inclusion of false statements to the parole board did not violate his rights:

> The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend XIV, § 1. By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In this case, petitioner has no liberty or property interest in being released on parole or in participating in prison programs, and thus the Due Process Clause does not require the state to follow any particular procedures. "A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See generally*, *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force "[t]he [D]ue [P]rocess [C]lause does not guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995); *accord Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Mayberry v. Hudson*, No. 92-2358, 1993 WL 147575, at *1 (6th Cir. May 5, 1993) (citing *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987)). Thus, petitioner has a protected liberty interest only if Michigan law creates such an interest.
> In the parole context, whether a state law creates a protected liberty interest

17

"turn[s] on the presence or absence of language creating 'substantive predicates' to guide discretion." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). Thus, to create a liberty interest the regulations at issue must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow[.]" *Id.* at 463; *accord Marshall*, 57 F.3d at 672. Under Michigan law, "a prisoner's release on parole is discretionary with the parole board." MICH. COMP. LAWS § 791.234(8); *see also*, *People v. Moore*, 164 Mich. App. 378, 387-88, 417 N.W.2d 508, 512 (1987). Thus, "Michigan's state statutes do not create an explicit entitlement to parole," and thus do not give rise to a protected liberty interest. *White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) (considering federal prisoner's challenge to denial of parole hearing by Michigan authorities); *accord Mayberry*, 1993 WL 147575, at *1 (same); *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994) (Gilmore, J., adopting Report of Morgan, M.J.) (same); *cf. Marshall*, 57 F.3d at 672-73. As the Sixth Circuit has explained:

> After *Olim* [*v. Wakinekona*, 461 U.S. 238 (1983)] and *Inmates* [*of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir. 1991)], it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights[.] . . . The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim*, 461 U.S. at 249. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such rules as a matter of *federal* due process.

*Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (footnote and parallel citation omitted) (emphasis in original); *see also*, *Foster v. Booker*, 595 F.3d 353, 368 (6th Cir. 2010); *Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (Tarnow, J.); *Glover v. Michigan Parole Bd.*, 460 Mich. 511, 520-21, 596 N.W.2d 598, 603-04 (1999).

Likewise, plaintiff has no constitutional right to participate in any prison rehabilitation programs. It is well established that "[p]risoners have no constitutional right to rehabilitation, education, or jobs." *Argue v. Hofmayer*, 80 Fed. Appx. 427, 429 (6th Cir. 2003) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *see also*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Thus, "participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee." *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

In the absence of a liberty or property interest protected by the Due Process Clause, no process is due and even wholly arbitrary actions by state officials are insufficient to establish a due process violation. *See Zorzi v. County of Putnam*, 30

F.3d 885, 895 (7th Cir. 1994); *Carter v. McCaleb*, 29 F. Supp. 2d 423, 429 (W.D. Mich. 1998) ("In the absence of a liberty interest, no process is *constitutionally* due."). Because plaintiff has no constitutional right to either participate in the SOP or to parole, he cannot show defendants' alleged actions denied him due process of law. *See Allen v. Rubitschun*, No. 4:06-cv-148, 2007 WL 951383, at *1 (W.D. Mich. Mar. 27, 2007) (because there is no right to rehabilitative programming or parole, plaintiff failed to state due process claim against prison officials who denied him access to rehabilitative program which resulted in Board's subsequent denial of parole based on his failure to complete the program).

Nor can plaintiff show that he was denied his due process rights by defendants' alleged provision of inaccurate information to the Board. Reliance on inaccurate information by the Board in denying parole, if it in fact happened, did not violate plaintiff's constitutional rights, *see Caldwell v. McNutt*, 158 Fed. Appx. 739, 741 (6th Cir. 2006), and in the absence of a protected liberty interest there is no due process violation even by state officials' deliberate lies. *See Sullivan v. Brown*, 544 F.2d 279, 282 (6th Cir. 1976) (citing *Bishop v. Wood*, 426 U.S. 341, 349 n.1 (1976)) ("Without a 'property' or 'liberty' interest protected by the due process clause, plaintiff would have no federally protected right, even if it be assumed that the statement of reasons or charges placed in her personnel file were false."); *Oliver v. Morris*, No. 6:06cv286, 2007 WL 869562, at *12 (E.D. Tex. Mar. 20, 2007) ("Even if the Defendants in this lawsuit relied on false information in recommending that Oliver be moved out of safekeeping, this is not a constitutional violation because Oliver had no protected liberty or property interest in his custodial classification.").

R&R, dated 1/10/13, at 16-19. This reasoning applies equally to plaintiff's claims against defendant Morrill. Accordingly, the Court should grant summary judgment to defendant Morrill on this claim.

### d. Equal Protection

Finally, plaintiff contends that defendant Morrill deprived him of the equal protection of the laws by treating him differently from similarly situated white inmates. "An equal protection claim must assert that the plaintiff suffered class-based discrimination." *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000) (citing *McClesky v. Kemp*, 481 U.S. 249, 292 (1987)). Thus, "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Suspect and quasi-suspect classes

19

under the Equal Protection Clause include those based on race, religion, alienage, national origin, ancestry, gender, and illegitimacy.  *See Owens v. Ventura County Super. Ct.*, 42 F. Supp. 2d 993, 998 (C.D. Cal. 1999).

Here, plaintiff cannot show that he was in fact treated differently from similarly situated white inmates.  Plaintiff asserts in response to defendant Morrill's motion for summary judgment that defendant Morrill treated him and other African American prisoners differently than similarly situated white prisoners because: (1) she corrected inaccuracies in the termination reports of three white prisoners, but did not do so for him, *see* Pl.'s Objection to Def.'s Request for Summ. J., dated 2/7/13, ¶ 27; (2) white prisoners who did not complete the mandatory book assignment work were not penalized, while African American prisoners were, *see id.*, ¶ 29; and (3) all nine white prisoners who participated in SOP therapy with defendant Morrill received favorable parole consideration, while all three African American prisoners did not, *see id.*, ¶ 32.  *See generally*, *id.*, ¶ 35.  In support of his claim, plaintiff presents his own affidavit and that of another prisoner averring these facts. However, neither affidavit explains with any specificity the different treatment received or how the prisoners were similarly situated as it relates to their compliance with the rules of the SOP program or their suitability for parole.  More importantly, neither plaintiff nor the other affiant explain how they know what was placed in the presumably confidential treatment reports of other prisoners.  As another court has recently explained:

> In a case such as this one, where Plaintiff challenges the actions of custodial officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir.1988). Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279 (1987); *Washington v. Davis*, 426 U.S. 229, 242 (1976). Further, conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. *GJR Inv., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1367–68 (11th Cir.1998); *Coon v. Ga. Pac. Corp.*, 829

F.2d 1563, 1569 (11th Cir.1987).

*Flournoy v. Duffie*, No. 1:10–CV–104, 2012 WL 4378099, at *6 (Sept. 7, 2012), *magistrate judge's report adopted*, 2012 WL 4711545 (M.D. Ala. Oct. 3, 2012).  Plaintiff's bare assertions that white inmates were treated differently than African American inmates, without a showing that he was similarly situated in relevant respects, *cf. McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("[S]imilarly situated individuals must be very similar indeed."), and that he was in fact treated differently, are insufficient to withstand summary judgment.  *See Morefield v. Smith*, No. CV607-010, 2009 WL 36673, at *11 (S.D. Ga. Jan. 5, 2009); *Givans v. Michigan Dep't of Corrections*, No. 1:07-CV-1168, 2008 WL 607411, at *5-*6 (W.D. Mich. Feb. 29, 2008).

Further, with respect to parole decisions, plaintiff cannot show that he was similarly situated to any other inmate, because such decisions are by their nature completely individualized:

> the Board's power to consider Petitioner's background, including his inability to complete institutional programs (regardless of the reason for failure) is unbridled. Further, the Board's decision is, necessarily, individualized. In such a setting, "no two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics."

*McNatt v. Patrick*, No. 05-128, 2007 WL 983838, at *7 (W.D. Pa. Mar. 27, 2007) (quoting *Rowe v. Cuyler*, 534 F. Supp. 297 (E.D.Pa.), *aff'd*, 696 F.2d 985 (3d Cir. 1982)); *see also*, *Lyon v. De La Jour*, No. CV 12-7671, 2013 WL 140243, at *5 (C.D. Cal. Jan. 9, 2013); *Johnson v. Paparozzi*, 219 F. Supp. 2d 635, 644 (D.N.J. 2002).  Accordingly, the Court should grant summary judgment to defendant Morrill on plaintiff's equal protection claim.

3.    *Defendant Dreyer*

The Court should also grant summary judgment to defendant Dreyer.  Plaintiff alleges that

21

defendant Dreyer retaliated against him by denying him law library call-out time in response to his grievances.  From plaintiff's allegations and defendant Dreyer's affidavit, it appears that defendant was merely covering in the library on the day in question, itineraries were not printed for the law library on the day in question, and defendant Dreyer offered plaintiff a time slot in the afternoon.  *See* Compl., Ex. 1b; Def.s' Mot., Ex. 1, Aff. of Craig Dreyer, ¶ 3.  In order to succeed on a retaliation claim, plaintiff must establish three elements:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.).  As the Sixth Circuit has explained, "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (Rosen J., adopting Report of Komives, M.J.).

Here, plaintiff offers nothing but a conclusory assertion that defendant Dreyer, who was not the subject of any prior grievance and who was not generally responsible for the law library, had a retaliatory motive.  On the contrary, it appears that it was the lack of a law library itinerary, rather than any retaliatory motive, that accounted for Dreyer's actions.  Further, plaintiff cannot establish that defendant Dreyer took an adverse action.  Defendant Dreyer offered plaintiff a time later in the day, and even if he had not, denial of law library access on a single occasion is insufficient to constitute an adverse action.  *See Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *9 (W.D. Mich. Mar. 24, 2011); *Briecke v. Jones*, No. 03-21054-CIV, 2005 WL 3700247, at *5 (S.D. Fla.

Dec. 30, 2005).  Accordingly, the Court should grant summary judgment to defendant Dreyer.

    4.    *ADA and Rehabilitation Act Claims*

    In his amended complaint, petitioner asserts claims against the defendants under the Americans with Disabilities Act and § 504 of the Rehabilitation act.  The Court should conclude that defendants are entitled to summary judgment on these claims, for two reasons.

    First, plaintiff names only individuals as defendants in his amended complaint, and individual defendants are not proper parties under the ADA or § 504.  Title II of the ADA provides, in relevant part, that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  The ADA further provides, however, that "[t]he term 'public entity' means–(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1).  By its terms, the statute does not apply to individuals, and thus "public entity" under the Act does not include an individual prison official.  Accordingly, plaintiff's complaint fails to state a claim against the individual defendants under the

ADA.  *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (Roberts, J.); *Damron v. North Dakota Comm'r of Corrections*, 299 F. Supp. 2d 970, 976 (D.N.D. 2004), *aff'd*, 127 Fed. Appx. 909 (8th Cir. 2005). Likewise, Section 504 imposes no liability on individuals.  *See Lee*, 104 Fed. Appx. at 493; *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999).  Accordingly, the individual defendants are entitled to summary judgment with respect to plaintiff's ADA and Section 504 claims.

Further, plaintiff's ADA and Section 504 claims fail as a matter of law.  To establish a Title II violation, plaintiffs must allege and show that (1) they have a disability; (2) they are otherwise qualified to receive the benefit or service at issue; and (3) they are being excluded from participation in, being denied the benefit of, or being subjected to discrimination in the provision of, the services, programs, or activities of the public entity because of their disability.  *See Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005).  Plaintiffs must allege and prove the same elements to establish a claim under Section 504.  *See S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).  Here, although plaintiff alleges that he has a disability and that he is being denied participation in a program or service, he does not allege that he is being denied participation *because of* his disability.  Rather, plaintiff explicitly states that he was denied participation in the SOP based on his race.  *See* Pl.'s Objection by Aff. to Def.s' Request for Summ. J., dated 5/2/13, ¶ 10 ("Affiant was also denied the benefits of SOP treatment . . . because Affiant is an African American prisoner."); *id.*, ¶ 11 ("Affiant was qualified to participate in the defendant's [sic] parole program as a person with a disability.  The defendants are subject to the ADA and RA, however, the defendants denied Affiant the opportunity of participating in the parole program.  Affiant was similarly situate[d] to white prisoners in his SOP group who were given an opportunity to participate

24

in defendant's [sic] parole program, Affiant was treated differently from his white group members. The defendants acted with discriminatory intent because of Affiant's race and ethnicity."). The ADA provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). To show that the exclusion was "by reason of" his or her disability, plaintiff must establish that his disability "actually play[ed] a role in the . . . decision making process and [had] a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir.2008) (internal quotation omitted). Plaintiff makes no such allegation. He alleges only that he was denied participation in the SOP on account of his race. Because plaintiff has failed to allege that he was discriminated against because of his disability, defendants are entitled to summary judgment on his ADA and § 504 claims. *See Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 123 (D.P.R. 2011).

    5.    *State Law Claims*

If the Court accepts the foregoing recommendation, the Court should also decline to exercise supplemental jurisdiction over plaintiff's state law claims. Congress has provided for limited, supplemental jurisdiction over state law claims that are related to federal claims over which a court has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a).

However, Congress has also provided that "[t]he district courts may decline to exercise

25

supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, fairness to litigants, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). But, when "federal law claims are eliminated before trial, the balance of these factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also, Gibbs*, 383 U.S. at 726 ("if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1307 (9th Cir. 1992); *Morse v. University of Vermont*, 973 F.2d 122, 127-28 (2d Cir. 1992); *Reynolds v. Mercy Hosp.*, 861 F. Supp. 214 (W.D.N.Y. 1994); *Heller v. CACL Federal Credit Union*, 775 F. Supp. 839, 843 (E.D. Pa. 1991).

Thus, "federal courts, absent exceptional circumstances, should abstain from exercising [supplemental] jurisdiction when federal claims in a case can be disposed of by summary judgment." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986). Accordingly, federal courts routinely decline to exercise supplemental jurisdiction over state law claims where the plaintiffs' federal civil rights claims are dismissed. *E.g., Martinez v. Colon*, 54 F.3d 980, 990-91 (1st Cir. 1995); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir. 1992); *Wynn v. Morgan*, 861 F. Supp. 622, 637 (E.D. Tenn. 1994); *Stera v. Hunt Real Estate Corp.*, 859 F. Supp. 661, 668 (W.D.N.Y 1994); *Mark v. Borough of Hatboro*, 856 F. Supp. 966, 976-77 (E.D. Pa. 1994), *aff'd*, 51 F.3d 1137 (3d Cir. 1995); *Wexley v. Michigan State Univ.*, 821 F. Supp. 479, 487 (W.D. Mich. 1993), *aff'd*, 25 F.3d 1052 (6th Cir. 1994); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413-14 (D.

Del. 1993); *Lahaza v. Azeff*, 790 F. Supp. 88, 93-94 (E.D. Pa. 1992); *Procopio v. Johnson*, 785 F. Supp. 1317, 1320 (N.D. Ill. 1992), *aff'd*, 994 F.2d 325 (7th Cir. 1993). Here, as explained above, plaintiff's federal claims are all subject to dismissal, and thus the Court should decline to exercise supplemental jurisdiction over plaintiff's purported state law claim.

Further, Congress has also provided that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)" if there are compelling reasons for doing so. 28 U.S.C. § 1367(c)(4). In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, fairness to litigants, and comity. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, comity counsels in favor of declining to exercise supplemental jurisdiction. Michigan has established a thorough and complex set of procedures for asserting medical malpractice claims.[4] Under § 1367, "interests of comity weigh against the exercise of supplemental jurisdiction given the procedural requirements in Michigan for filing a medical malpractice claim." *Getter v. Doe*, No. 11-12021, 2012 WL 834556, at *6 (E.D. Mich. Mar. 12, 2012) (Cohn, J.); *see also, Reed-Bey v. Pramstallar*, No. 06-10934, 2012 WL 987830, at *6 (Feb. 15, 2012) (Whalen, M.J.), *magistrate judge's report and recommendation adopted*, 2012 WL 987854 (E.D. Mich. Mar. 23, 2012) (Roberts, J.). Accordingly, the Court should dismiss without prejudice plaintiff's state law claims against all of the defendants.

---

[4]Although the basis of plaintiff's state law claims is not entirely clear, they are based on his assertion that he was denied adequate mental health treatment. It is well established under Michigan law that "'a complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence.'" *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 43, 594 N.W.2d 455 (1999) (quoting *McLeod v. Plymouth Court Nursing Home*, 957 F.Supp. 113, 115 (E.D.Mich., 1997)).

D.    *Plaintiff's Second Motion to Amend*

In his second motion for leave to amend, plaintiff seeks to add a claim that defendant Luckey

interfered with his access to the law library in retaliation for his having asserted a claim under the

ADA and the Rehabilitation Act.  The Court should deny plaintiff's motion for leave to amend.

1.    *Legal Standard*

Ordinarily, leave to amend a complaint or other pleading "shall be freely granted when

justice so requires."  FED. R. CIV. P. 15(a).  Generally, courts have shown "a strong liberality . . . in

allowing amendments under Rule 15(a)."  *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865 (4th Cir.

1941).  As the Supreme Court has stated:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.–the leave sought should,
> as the rules require, be "freely given."  Of course, the grant or denial of an
> opportunity to amend is within the discretion of the District Court, but outright
> refusal to grant the leave without any justifying reason appearing for the denial is not
> an exercise of discretion; it is merely abuse of that discretion and inconsistent with
> the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Thus, "[w]hen there is a lack of prejudice to the

opposing party and the amended complaint is obviously not frivolous, or made as a dilatory

maneuver in bad faith, it is abuse of discretion to deny [the] motion." *Hurn v. Retirement Fund Trust*

*of Plumbing, Heating & Piping Indus. of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).  In short,

courts should construe liberally Rule 15(a) in favor of permitting amendment.  *See Greenberg v. Life*

*Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999); *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.

1987).

Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to

deny leave to amend.  One such circumstance is when amendment would be "futil[e]."  *Foman*, 371

U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003).  Amendment is futile

when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the

proposed amendment fails to state a claim upon which relief may be granted.  *See In re NAHC, Inc.

Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d

299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir.

2000).  When, as is the case here, the motion to amend is made in response to a motion for summary

judgment, the Court may properly look to the affidavits and other evidence in the record.  In such

a case, "[f]aced with the affidavits and documentary evidence filed by the defendants in support of

summary judgment, the Court cannot assess the proposed amended complaint as if that evidence

does not exist."  *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1414 (S.D. Ind. 1996).  In such a case,

the proposed amended complaint is futile under Rule 15(a) not only if it would fail to survive a

motion to dismiss for failure to state a claim, but also if the amended pleading could not survive a

previously filed motion for summary judgment.  *See Bauchman v. West High Sch.*, 132 F.3d 542,

561-62 (10th Cir. 1997); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989);

*Smith*, 938 F. Supp. at 1414.

    2.    *Analysis*

Here, leave to amend would be futile for two reasons.  First, plaintiff cannot establish that

defendant Luckey retaliated against him.  In addressing plaintiff's First Amendment retaliation claim

against defendant Luckey, I explained:

> With respect to defendant Luckey, plaintiff more specifically alleges that
> Luckey retaliated against him by failing to put him on the library call-out.  Defendant
> Luckey avers in the affidavit attached to his motion that plaintiff was not granted a
> call-out on December 19, 2011, because it would have conflicted with plaintiff's job

> assignment, and that each of plaintiff's five requests for legal copies were each
> processed.  In his response to defendant Luckey's motion for summary judgment,
> plaintiff does not address these averments, nor does he provide any evidence to
> contradict Luckey's averments.   Defendant Luckey's uncontradicted affidavit
> suffices to show that he "would have taken the same action in the absence of the
> protected conduct," *Thaddeus-X*, 175 F.3d at 399, and thus defendant Luckey is
> entitled to summary judgment on plaintiff's retaliation claim. *See Smith v. Campbell*,
> 250 F.3d 1032, 1039 (6th Cir. 2001).

*See* R&R, dated 1/10/13, at 26.  Although plaintiff's latest claim alleges a different reason for the

discrimination, the remainder of the claim is the same.  And because plaintiff has failed to offer

anything to contradict defendant Luckey's uncontradicted affidavit which shows that he would have

taken the same action in the absence of any protected conduct, plaintiff's ADA retaliation claim fails

for the same reason as his First Amendment retaliation claim.  *See D.B. ex rel. Elizabeth B. v.*

*Esposito*, 675 F.3d 26, 43 (1st Cir. 2012); *Baldyga v. City of New Britain*, 554 F. Supp. 2d 268, 280

(D. Conn. 2008).

Second, as with plaintiff's substantive ADA and § 504 claims, there is no individual liability

under the retaliation provisions of those statutes.  The ADA retaliation provision provides that "[n]o

person shall discriminate against any individual because such individual has opposed any act or

practice made unlawful by this Act . . . ."  42 U.S.C. § 12203(a).  At first blush, this statute appears

to contemplate individual liability; after all, unlike Title II which speaks to the actions of public

entities, this provision explicitly provides that "no person" shall retaliate.  However, the remedy for

such retaliation is provided by § 12203(c), which prescribes different remedies according to the type

of retaliation alleged.  As relevant here, when the retaliation relates to the provision of public

services, § 12203(c) provides that the remedies are those provided under Title II, codified in §

12133.  That section, in turn, incorporates the Rehabilitation Act remedies set forth in 29 U.S.C. §

794a, which in turn incorporates the remedies under the Civil Rights Act set forth in 42 U.S.C. §

2000e-16 and § 2000d *et seq.*.  None of these remedies is available against an individual defendant, other than a head of a department or agency sued in his official capacity.  *See Key v. Grayson*, 163 F. Supp. 2d 697, 704 (E.D. Mich. 2001) (Gadola, J.).  In other words, "[n]one of the remedies available for violating § 12203(a) apply against a defendant in his individual capacity."  *Id.*  Because there is no remedy against an individual defendant for violation of the anti-retaliation provision, the overwhelming majority of courts have held that "§ 12203(a) creates no individual liability under the ADA for retaliating in relation to the provision of public services."  *Id.* (citing *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642, 645 (N.D. Cal. 2000); *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 551-52 (D.N.J. 2000); *Kautio v. Zurich Ins. Co.*, No. 97-2411, 1998 WL 164623, at *1-*2 (D. Kan. Mar. 18, 1998); *Cable v. Department of Developmental Servs.*, 973 F. Supp. 937, 943 (C.D. Cal. 1997)); *see also*, *B.K. v. Lake Oswego Sch. Dist.*, No. 3:11-cv-278, 2012 WL 844222, at *3 (D. Or. Mar. 12, 2012) (citing cases).  *But see*, *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161 (11th Cir. 2003) (reaching opposite conclusion).  Because the ADA retaliation provision does not impose individual liability, and because in any event plaintiff's ADA retaliation claim fails as a matter of law, the Court should conclude that amendment would be futile.  Accordingly, the Court should deny plaintiff's motion for leave to amend.

E.    *Conclusion*

In view of the foregoing, the Court should deny plaintiff's motion to stay summary judgment, deny plaintiff's second motion for leave to amend, and grant defendants' motions for summary judgment.  Accordingly, the Court should grant summary judgment to defendants' with respect to plaintiff's claims against defendants Morill and Dreyer and with respect to his ADA and

31

Rehabilitation Act claims against all defendants, and should decline to exercise supplemental jurisdiction over any state law claims plaintiff is asserting.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                             s/ Paul J. Komives
                                             PAUL J. KOMIVES
Dated: June 20, 2013                         UNITED STATES MAGISTRATE JUDGE

32

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Frederick Smith and Counsel of Record on this date.

Dated: June 20, 2013                          s/ Lisa C. Bartlett
                                              Case Manager